Good morning, Your Honors. May it please the Court. My name is Alicia Moss. I'm pro bono counsel representing Petitioner James Gathii, and thank you very much for the opportunity to present this under the pro bono program of the Ninth Circuit. Petitioner is from Kenya. He applied for asylum and was denied asylum in 2010, but he was granted withholding of removal after removal order was entered against him. About seven years later, he married his current wife, and she petitioned for him for an immigrant visa. So he was, your client, was in status when the I-130 was filed, correct? No, Your Honor, he was not. But he had withholding. Right. It is not necessarily a status. It is an order of removal, and then that order is withheld. Let me back off and ask it this way. Okay. He was in the country properly. Yes, Your Honor. Yes. And there was no order of removal or anything like that. He'd been granted withholding. There was no time constraint on that grant, although the government could revoke it, I suppose, if they saw fit. But he was in status at that point. He meets and marries a woman. She files a I-130 for him. It's granted, we can safely assume, after an investigation to determine if it was legitimate. Yes, Your Honor, that's correct. They are still married. Yes, Your Honor. And now he wants to apply for LRP, lawful permanent resident, off of that I-130, correct? Yes, Your Honor. That's where we are. That is exactly where we are. So even as we're here today, he still has withholding. Yes. And he's in a marriage, which the Immigration Service is determined to be proper, not fraudulent. Yes, Your Honor. And the marriage continues to exist. Yes, Your Honor, that is correct. Why are we here? We're here because he cannot regulate his status. He cannot adjust his status. He cannot get a green card. He cannot have that permanency and have those rights that a lawful permanent resident gets. But for the fact that he has a removal order that has been withheld, the only way he can adjust his status is by having that removal order reopened. And that is why we're here. He requested that removal order to be reopened. And granted, it was seven years later, but his equities, his marriage did not come into effect until 2017. And he immediately, one month later, filed his I-130. He did not sit on his rights. It was USCIS, the United States Citizenship and Immigration Service, that took a year to adjudicate his marriage petition. And then only two months after the grant of the I-130 does he file his motion to reopen. He was very diligent. And if we look at the equitable tolling and we look at the long-held common law standards here with equitable tolling, is exceptional circumstances and due diligence. And under due diligence, we have the prong or sub-prong of making sure that they're not dilatory. Like in the case in Karancho, that petitioner was- If he gets to reopen, is it automatic he can adjust because of the approval of the I-130? No, Your Honor. The immigration judge has discretion to either approve or deny his status. That's one option. Or the immigration judge and DHS on a motion could terminate, dismiss, depending on the posture of the case. And he could then adjust before USCIS. Does he run any danger that if it's reopened and it doesn't go well in one form or another, he could be subject then to their yanking, the withholding of removal? It is absolutely possible. However, Kenya has not gotten any better. Actually, just last month, there's articles in the news about the Mungiki, which is the basis of the persecutor in his case, now gaining more power. And there's an election next month. Weren't those grounds rejected when he sought asylum? No. The grounds about his asylum claim, they were found credible. It's just that he applied for asylum only 38 days after the one-year bar for asylum. And the immigration judge, I'm guessing because I listened to the hearing and I couldn't tell, the audio was so poor that pre-terminated his asylum application because he didn't find extraordinary circumstances for the delay in filing. But we're talking about a 38-day filing. And asylum is a much lower bar to prove where you have a 51% or more in withholding. So those grounds still apply. I don't think he would be in too much danger of the immigration judge ruling that he should not have withholding when he goes back. And he would then, his case would be reopened. He could also ask for the extraordinary circumstances to be looked at, change country circumstances to be looked at. Can I ask a question? If he left the country, could he file the I-130 from outside the country, and then it could be adjudicated by CIS? Well, the I-130 is already approved, so we're good on that. But the second part of it is the actual green card application. And there's two ways, like Your Honor suggested, is outside of the country. Unfortunately for him, if he leaves the country, he executes a removal order. And then to consular process his green card becomes extraordinarily difficult. And he does, there is a permission to enter after a deportation order form that he could fill out and file before he filed his consular processing green card application. But there's no guarantee that CIS would adjudicate that favorably in his case. It's possible. Okay. And the one other question I have, it seems like most of the times that we've equitable tolling is when there's deception, fraud, or error. And this doesn't fit any of those cases. No, it doesn't. But we do have many cases, you have many cases that also do for exercise equitable tolling for change of law, for other types of extraordinary circumstances. And I believe that is the extraordinary circumstance is just, it's that he married a U.S. citizen. Yes and no. That is the starting point for the extraordinary circumstance. And under the two-part equitable tolling, which also, like I said, includes new law and other things besides fraud, and ineffective assistance of counsel, which to your point, I'm so sorry, I meant to mention that those cases mostly. So when we start with the extraordinary circumstances, we can start with the marriage. But there are other factors because it's equitable. So we have to look at all of his equities. And the immigration did not look at any of his equities, which don't just include his marriage. It includes the persecution he could suffer if he went back to Kenya. It also includes the fact that he could not go back to Kenya under withholding. He could not his wife here, which over the course of the years, his relationship deteriorated with his wife, and he lost her and then married a new... Could he have sought to reopen before the I-130 was approved by INS? We have, this court has case law that is very amenable to that. It is the, if I'm going to pronounce it right, the Kailulu case, which goes to that. And it shows that the policy of favorably exercising discretion to continue to reopen when an I-130 has not been adjudicated yet. And Kailulu is a very good case to look at. But what you're telling from your client's point of view, at least this is your argument, that he could have filed before the I-130 was approved. But if he had, the likelihood is they would have said, go finish up the I-130 process and then come back. Yeah, absolutely. When the I-130 process was complete, 30 days later, he did that. Oh, absolutely. Yes. That's where we are now. That's exactly where we are. And I see that I'm under two minutes. I didn't say that in the beginning. Sorry. We'll give you some more time. One question I had, the problem I have is that I've not, I was looking for a case that's similar to this, where we've granted this type of petition, and I just haven't found one. So this would be the first? This is the first instance that this, the Ninth Circuit has dealt with this. But the third and the fifth and the sixth, they've dealt with these type of issues and have favorably exercised equitable tolling, or at least said that we shouldn't apply draconian, strict rules in equity. And that's where we're sitting right now. This is all about equity. And when an immigration judge does not even exercise or look at, or in a half sentence, just say, no, sorry, no equity here, without looking at all of this, then the Ninth Circuit should say, no, that's not okay, for one. But on this uncontested record, this court could find equitable tolling. And instead of remanding back to the BIA and using those judicial resources, having an opinion, maybe coming back here, or remanding to the immigration judge to look at equitable tolling, this court could, on this uncontested record, say, yes, there's equitable tolling. It's extraordinary circumstances that he got married, that he has this relief now he never had before, that he would suffer persecution if he went back. He lost his wife. He's been in this country. He's been good. He hasn't committed any crimes. All of those things are equities that this court, on this record, could see and say, yes, in this case, with a person with withholding, there's equitable tolling, and then remand back to the immigration judge. Want to save the rest of your time for a rebuttal? Yes. Thank you. Thank you, Your Honor. May it please the court? My name is Nancy Safavi, and I represent the respondent in this case. The court should deny this petition for review because the petitioner's motion to reopen is time-barred, and a legal basis for equitable tolling was not provided for in his motion to reopen. Before the board, the petitioner did not exhaust his administrative remedies and meaningfully challenge Crenshaw in his brief before the board. Therefore, the court lacks jurisdiction to entertain arguments because it wasn't administratively exhausted, and it should not be. In terms of sui sponte reopening, this court has very limited authority to review that discretionary form of device for a discretionary form of relief, which is adjustment of status. To answer a couple of your questions... Can I ask a question? Your counterpart suggests that the problem with the sui sponte IG action is that there was no discussion of it at all. Plainly, a very high bar to be able to find that there had been an abuse in terms of not exercising sui sponte consideration, but is it correct in the record that the IG just didn't say anything about it at all? The respondent would contend that that is not correct. If you look at the immigration judge's decision, the first part of the decision addresses that there wasn't a legal basis for equitable tolling in the motion to reopen, and then the second part of his decision is about sui sponte reopening, and then he discusses Crenshaw, and then he also then states that even if I were to reopen this, yes, I do have jurisdiction over the adjustment of status application. However, I still have to find he's removable, and I don't have authority to then terminate the proceedings, and petitioner does not address this anywhere before the board or really within the opening brief. I think the key question is, you know, what authority is And I also think another key question would be, you know, I recognize the petitioner saying that there is no remedy. I think that procedurally that is also inaccurate. If you look at some of the briefing that was done before the board, after DHS files a motion opposing it, then you begin to see a petitioner argue that there was ineffective assistance of counsel, but in doing that, he doesn't take the necessary steps to meaningfully challenge to provide this court or the board with an ineffective assistance of counsel claim. So there is not an ineffective counsel. Can you hear me all right? Yes, I can hear you. Okay. When would the petitioner have had to file in order for it to be timely? 90 days from his removal order. And if he filed it after 90 days of his removal order, he wouldn't have needed to establish a legal basis for equity. I'm just looking for a time answer. 90 days. Yes, that is correct. From the entry of a removal order. Yes. Which would have been 2010. In 2010, there was a removal order? Yes. So I'd like to address that because I think earlier you asked about whether or not there was a removal order. So technically there is still a removal order. What happens is they're granted a form of relief that withholds them from being removed to the country that they are stating they would be persecuted or tortured. So there is still a removal order. Believe me, counsel, we understand this. Okay. I've only been doing this for 25 years and I've probably had 5,000 immigration cases. Do you agree that the USCIS properly granted the I-130? Yes or no? Yes. Do you agree he has no criminal record? Yes. Do you agree that if he had filed after the entry of a removal order about which there's some uncertainty whether it was ever entered, that the likely response from the IJ would have been you have to wait until the I-130 is dealt with? Is that correct? I think it would depend, but I will say it is correct. Yes. I used the word likely. I didn't say always, whatever. Now let me ask you this question. Is this case capable of mediation? It is. Excuse me, would the government agree to mediation? Yes. Counsel? Yes, sir, I would agree to mediation. I don't hear anything else. Thank you both for your candor. I agree. Can I ask a quick clarification question? I didn't hear opposing counsel's response. I apologize. We would agree to mediation. Okay, great. Thank you so much. Well, I think there's nothing more to be said at this point. Counsel, thank you for handling this case pro bono and we'll submit this case. Thank you. Thank you both for your argument.
judges: HAWKINS, BUMATAY, Seeborg